UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-468-GWU


SHARON DIAZ,                                                                    PLAINTIFF,


VS.                                       **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

06-468  Diaz

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id. Accord, Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.   <u>Varley   v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Diaz, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of insulin-dependent diabetes mellitus, mild disc bulging without stenosis, a depressive disorder, dysthymia, "rule out" social phobia, borderline intellectual functioning, and borderline personality.   (Tr. 24). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.   (Tr. 24-8).   The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, educational background, and work history could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional restrictions.  (Tr. 353).  She: (1) had a "seriously limited but not precluded" ability to understand, remember, and carry out complex instructions, behave in an emotionally stable manner, and relate predictably in social situations; and (2) had a "limited but satisfactory" ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember, and

06-468  Diaz

carry out detailed instructions, and demonstrate reliability.  (Tr. 353-4).  The VE responded that there were jobs that such a person could perform at the medium level, such as cleaning and janitorial-type jobs, dishwashing jobs, industrial jobs such as hand packing, and food preparation jobs, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 354).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The only physical restrictions given by an examining medical source were contained in the report of Dr. Monte Edward Martin, who conducted a consultative evaluation of the plaintiff on June 19, 2004.  The plaintiff described her problems as chronic back pain and diabetes.  (Tr. 292).  Dr. Martin had access to some previous records including plain x-rays of the lumbar spine which were normal, but did not have access to an MRI which reportedly showed bulging discs by the patient's report.  (Tr. 292-3).[1]  His examination showed that the plaintiff, who weighed 220 pounds at a height of 5 feet 3 inches, had a limited range of motion in the left hip. (Tr. 294).  After repeating that he had no documentation of degenerative disc disease, Dr. Martin concluded his narrative report by saying that the plaintiff would have no physical limitations in her activities of daily living or in job-related activities. (Tr. 295).  However, on a specific functional capacities form completed the same

---

[1]An MRI of the lumbosacral spine is contained in the court transcript, showing mild bulging at several levels.  (Tr. 133).

8

day, Dr. Martin indicated that the plaintiff would be limited to lifting and carrying capacities consistent with the Commissioner's definition of "medium" level work, with bending and squatting limited to occasionally (defined as "0% to 33%" of the time) and crawling and climbing limited to "frequently" (defined as "34% to 66%" of the time). (Tr. 296). Perhaps more significantly, Dr. Martin limited the plaintiff to sitting four hours in an eight hour day "with rests," standing three hours in an eight hour day "with rests," and walking two hours in an eight hour day "continuously." (Id.). Dr. Martin gave the specific reason for these restrictions as being the mildly reduced range of motion of the left hip. (Id.).

The glaring contradiction between Dr. Martin's functional capacities form and his narrative report was not addressed by the ALJ, who appeared to rely on the conclusions in Dr. Martin's narrative report. (Tr. 21). Consequently, the ALJ did not address the requirements of 20 C.F.R. Section 416.919p(2) requiring the defendant to review whether a consultative examiner's report is "internally consistent." Therefore, a remand will be required in order to obtain additional information on this issue.

The plaintiff also makes an argument on appeal concerning her IQ scores, which included a full scale IQ of 76 obtained in a June 2004 psychological evaluation (Tr. 287), placing her in the bottom ten percent of the U.S. population. The plaintiff argues that the Dictionary of Occupational Titles (DOT) describes individuals with this IQ as being in the lowest ten percent of the U.S. population, and the VE should

06-468  Diaz

have been so advised.  The plaintiff suggests that in a previous Memorandum Opinion by the undersigned, Cody v. Commissioner of Social Security, London Civil Action No. 05-612-GWU (E.D. Ky. December 15, 2006), a remand was issued in a similar situation.  However, in that case, there was specific testimony from a VE, Dr. Norman Hankins, that none of the jobs he had cited in response to the ALJ's hypothetical question would be available to an individual whose intelligence level was in the bottom ten percent of the population.  There was no such testimony from the VE in the present case.[2]  Although the plaintiff was unrepresented at the administrative hearing, and presumably would not be expected to present such a recondite issue to the VE, this court has otherwise declined to make a general finding that individuals with IQs in the lowest ten percent of the U.S. population would be unable to perform unskilled jobs.  See, e.g., Howard v. Barnhart, London Civil Action No. 04-474 (E.D. Ky. October 26, 2005).  Since the case is being remanded on other grounds, counsel for the plaintiff is free to explore this issue with the VE on remand.

The decision will be remanded for further consideration.

This the 25th day of July, 2007.



**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

_____

[2]The plaintiff's brief states that Dr. Hankins was the VE in the present case as well, but the transcript shows that it was Dr. James Miller.  (Tr. 352).

10